# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CASE NO. 3:94-CR-00017-FDW

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **ORDER** |
| **WILLIE LEE HARRIS, a/k/a "Big Daddy,"** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

      **THIS MATTER** is before the Court on the Motion to Appoint Counsel and Reduce Sentence, (Doc. No. 409), which Defendant filed pro se. This matter has been fully briefed, (Doc. Nos. 412, 413, 441, 443, 447, 448, 449, 457, 459), and is ripe for ruling. Having carefully considered the motion and the record, the undersigned will DENY the motion to appoint counsel[1] and to reduce his sentence.

## I.    BACKGROUND

      Between December of 1989 and August of 1993, Defendant was involved in a conspiracy that distributed more than 150 kilograms of cocaine into the Charlotte area. Defendant and Mark Sears gave direction and supplied the cocaine to other co-conspirators. Defendant was involved in planning and coordinating the delivery of the cocaine from the Atlanta area to Charlotte. Defendant and another co-conspirator spearheaded the entire operation.

---

[1] Defendant seeks appointment of counsel "under the First Step Act 18 U.S.C. 3582(C)(1)(a) [sic]." (Doc. No. 144, p. 1). It is well-settled that "a criminal defendant has no right to counsel beyond his first appeal." United States v. Legree, 205 F.3d 724, 730 (4th Cir. 2000) (quoting Coleman v. Thompson, 501 U.S. 722, 756 (1991)). "Though in some exceptional cases due process does mandate the appointment of counsel for certain postconviction proceedings, . . . [a] motion for reduction of sentence does not fit into this category." Legree, 205 F.3d at 730 (internal citation omitted); see also In Re: Appointment of Counsel for Motions for a Sentence Reduction Pursuant to the First Step Act, 3:21-mc-228 (W.D.N.C. Dec. 16, 2021) (emphasizing appointment of counsel is not authorized for "motions for sentence reduction or release under 18 U.S.C. § 3582(c)").

In February of 1994, Defendant and 12 other co-defendants were named in a two count Bill of Indictment filed in the Western District of North Carolina. Count One charged Defendant with Conspiracy to Possess With Intent to Distribute, and Distribute, Cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. Count Two charged Defendant with Money Laundering and Aiding and Abetting the Same, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i) and 18 U.S.C. § 2. Defendant pled not guilty to the charges. (Doc. No. 394). Defendant was acquitted of Count Two but a jury found him guilty on Count One.

At the time of the offense Defendant was in his early thirties and his criminal history included carrying a concealed weapon, petty theft, possession of marijuana, involuntary sexual battery, attempt to commit sexual battery, trafficking in cocaine, and idling and loitering for illicit behavior.

The Presentence Report ("PSR") attributed more than 150 kilograms of cocaine to Defendant and calculated his guidelines level as: base level 38. (Id.). The PSR also indicated Defendant had at least two qualifying prior convictions to trigger the then-mandatory career-offender enhancement under U.S.S.G. § 4B1.2. (Id.). Pursuant to U.S.S.G. § 3B1.1(a), the offense is increased four levels, and pursuant to U.S.S.G. § 3C1.1, two more levels are added, resulting in an adjusted offense level of 44. Since Defendant's adjusted offense level was greater than the career offender offense level of 37, the adjusted level of 44 applied. (Id.). Pursuant to Application Note 2 in the commentary to Chapter 5, Part A, an offense level of more than 43 is to be treated as an offense level of 43, thus Defendant's total offense level was 43. However, during sentencing Defendant's total offense level was reduced to 42, reducing the guideline range to 360 months to life. (Doc. No. 403). The total of the criminal history points was 7. According to the sentencing table at U.S.S.G. Chapter 5, Part A, 7 criminal history points established a criminal history

2

category of IV. However, pursuant to 4B1.1, his career offenders criminal history category resulted in a category VI. (Doc. No. 394). The Court sentenced Defendant to life imprisonment.

While in BOP custody, Defendant committed one disciplinary infraction in June 2021. He has completed approximately forty-four treatment programs, educational programs, or work assignments. Defendant now seeks a reduction to time served and argues that if he were sentenced today, he would receive a shorter sentence because he would no longer be classified as a career offender and because he suffers from medical conditions that make him more susceptible to severe illness from COVID-19. Defendant does not have a projected release date because he is serving a life sentence.

## II. STANDARD OF REVIEW

Section 603(b) of The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to seek a modification of his sentence from the court for "extraordinary and compelling reasons" if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before the First Step Act amended § 3582(c)(1)(A), a court could only act to reduce a defendant's sentence for extraordinary and compelling reasons if the BOP filed a motion seeking that relief.

If a defendant has administratively exhausted a claim for release (or the Government does not contest the exhaustion requirement),[2] the district court generally conducts a two-step inquiry when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A). United States v. Bond, 56 F.4th 381, 383 (4th Cir. 2023). First, the court determines whether the defendant is

---

[2] United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021) (recognizing the exhaustion requirement in § 3582(c)(1)(A) is not jurisdictional, and it may be waived or forfeited).

eligible for a sentence reduction. "A defendant is eligible if the court finds "extraordinary and compelling reasons warrant such a reduction."" Id. (quoting § 3582(c)(1)(A)(i); citing United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021)). "[D]istrict courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise." United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (internal alterations and citations omitted).

"Second, the court considers 'the factors set forth in section 3553(a) to the extent that they are applicable.'" Bond, 56 F.4th at 384 (quoting 18 U.S.C. § 3582(c)(1)(A); citing Kibble, 992 F.3d at 331. Section 3553(a) requires the court to "impose a sentence sufficient, but not greater than necessary" to comply with the basic aims of the statute. In considering whether a reduced sentence is warranted given the applicable § 3553(a) factors, the court considers, among others, "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" the kinds of sentences available and sentencing ranges; and "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a). Notwithstanding the existence of "extraordinary and compelling reasons," the court retains the discretion to deny a defendant's motion after balancing the applicable 18 U.S.C. § 3553(a) factors. United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) ("if a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction.").

Here, the record is clear Defendant exhausted his administrative remedies; thus, the Court's analysis turns to whether Defendant presents extraordinary and compelling reasons supporting his release in light of the applicable § 3553(a) factors.

## III. ANALYSIS

Defendant contends that he would not be a career offender if sentenced today, which he asserts has resulted in an unwarranted sentence disparity constituting an extraordinary and compelling reason for compassionate release. Defendant argues the § 3553(a) factors counsel in favor of a reduction to a sentence of time served, particularly given his post-sentencing rehabilitation. The Government disagrees and argues, despite the reduction in Defendant's career offender status, Defendant does not face a new sentencing guideline range, and even if he did, the sentencing considerations described in 18 U.S.C. § 3553(a) do not support a sentence of time served.

The Fourth Circuit has recognized that "gross" or "exceptionally dramatic" sentencing disparities between a sentence under the prior law and the current law *can* constitute "extraordinary and compelling reasons," to warrant a reduction in a sentence as imposed. United States v. McCoy, 981 F.3d 271, 274-75, 285, 288 (4th Cir. 2020) ("[T]he *enormous* disparity between [the original] sentence and the sentence a defendant would receive today *can* constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A). (Emphasis added.)); see also Concepcion v. United States, 213 L. Ed. 2d 731, 142 S. Ct. 2389 (2022); United States v. Reams, No. 1:14-CR-426-1, 2022 WL 2834341, at *4 (M.D.N.C. July 20, 2022) ("A change in sentencing law alone does not compel compassionate release." (citing McCoy, 981 F.3d at 286)), appeal dismissed, No. 22-6957, 2022 WL 18716532 (4th Cir. Nov. 16, 2022). There is no bright line rule or formulaic approach to determine what "disparity" between sentences must exist in order to be considered "extraordinary and compelling," and courts instead look to a defendant's individualized circumstances. See United States v. Johnson, No. 2:08-CR-00930-DCN-7, 2023 WL 24129, at *4 (D.S.C. Jan. 3, 2023) ("[D]istrict courts have determined that an inmate failed to present

extraordinary and compelling reasons for compassionate release even though he would have been subjected to a lower advisory guideline range if sentenced today." (citing <u>United States v. Hallman</u>, 2022 WL 4477710, at *3 (W.D.N.C. Sept. 26, 2022) (holding that even though the defendant would no longer be classified as a career offender, the sentencing disparity [between the original 360 months to life and the current range of 161 and 180 months] did not amount to an extraordinary and compelling reason because his criminal history "would likely have warranted an upward variance"); <u>United States v. Massey</u>, 2021 WL 4233886, at *4 (W.D.N.C. Sept. 16, 2021) (explaining that even though Hobbs Act robbery was no longer categorized as a crime of violence, the defendant's sentencing disparity [between the original range of 110 and 137 months and the current range of 70 and 87 months] was not so drastic that compassionate release was warranted); <u>see also</u> <u>United States v. Crumitie</u>, No. 1:06-CR-271, 2022 WL 1809312, at *4 (M.D.N.C. June 2, 2022) (recognizing that although the defendant would not be considered a career offender and a within-guidelines sentence would be "substantially shorter" if the defendant were sentenced today, that is "only one possible hypothetical result" in light of the plea agreement, the potential for the court to not impose a middle-of-the-range sentence, the violent crime committed by the defendant, and his "long criminal history of assaults and robberies").

As a starting point, the change in intervening law and guidelines on which Defendant relies were not made retroactive and therefore have no effect on the *validity* of his career offender designation. The parties appear to agree that if sentenced today, Defendant would not be classified as a career offender; however, his advisory guidelines range would remain the *same* at 360 months to life.

The individualized circumstances here and the lack of a sentencing disparity created by the fact Defendant would not be a career offender if sentenced today does not constitute extraordinary

and compelling reasons to consider a reduction in Defendant's sentence. In so concluding, the Court summarily rejects Defendant's argument that his medical conditions, when coupled with the threat of the COVID-19 virus, constitute extraordinary and compelling reasons to reduce his sentence. Nothing in this record suggests his current place of incarceration has failed to take appropriate measures to manage Defendant's medical conditions and nothing suggests the conditions of his current institution—such as uncontrolled spread of the virus or significant outbreaks—create a particularized risk of contracting the disease at his prison facility different than the risk outside the prison.

Although extraordinary and compelling reasons do not exist for the reasons discussed above, the Court nevertheless concludes the full record, the applicable § 3553(a) factors, and Defendant's post-sentencing conduct counsel against a sentence of time served.

As an initial matter, the Court notes that during Defendant's original sentencing, his previous counsel requested the Court give Defendant the minimum of 360 months. (Doc. No. 403, p. 53). The Court considered counsel's argument and *declined* to sentence Defendant to the low end of the guideline range. In expressly rejecting the argument, the Court noted, "[t]he defendant is a career offender, has several prior arrests for controlled substances, violations and crimes of violence." (Id. p. 54). The Court considered the offense conduct for the serious offenses of distributing cocaine —which remains unchanged—as well as Defendant's criminal history, including multiple controlled substance and violent convictions—which also remain unchanged—as part of the basis for the sentence imposed. Although he was in his mid-thirties at the time he was sentenced in this case, his record up to these offenses shows he consistently faced criminal charges and convictions beginning at age 22.

Turning to Defendant's more recent conduct, his disciplinary record while incarcerated tends to show a very clean record, however, he received one disciplinary action in June 2021. The Court encourages Defendant to comply with all rules going forward in the event of any future motion that may be filed.

With respect to Defendant's efforts at rehabilitation, the Fourth Circuit has held that district courts must provide an individualized explanation for denying relief when the defendant presents evidence of post-sentencing *rehabilitation*. High, 997 F.3d at 189-90 ("[A]s Chavez-Meza makes plain, there are cases in which a minimal explanation suffices, while in other cases, more explanation may be necessary." (citing Chavez-Meza v. United States, 138 S. Ct. 1959 (2018)); cf. United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021) (requiring additional explanation of district court's reasons for rejecting nearly two decades of prison programming and rehabilitative efforts). Here, the Court acknowledges Defendant has completed approximately 44 treatment, education or work courses during the approximate twenty-nine years he has been imprisoned. Further, the Court acknowledges the numerous letters it has received attesting to Defendant's rehabilitation while incarcerated. However, these rehabilitative efforts do not outweigh the seriousness of the offense and Defendant's prior disregard for the law, as well as his recent receipt of a disciplinary infraction.

## IV. CONCLUSION

In addressing changes created by Congress as a result of the First Step Act, the Supreme Court has reiterated the wide discretion afforded to district judges in sentencing and in considering motions for sentence modification. "Put simply, the First Step Act does not *require* a district court to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction, or the Government's view that evidence of violent behavior in prison

counsels against providing relief. . . . All that is required is for a district court to demonstrate that it has considered the arguments before it." Concepcion v. United States, 213 L. Ed. 2d 731, 142 S. Ct. 2389, 2404–05 (2022) (emphasis added). As the Middle District of North Carolina summarized, "The compassionate release statute is appropriately invoked only in unusual cases or, as the Fourth Circuit put in in McCoy, the 'most grievous cases.'" Crumitie, No. 1:06-CR-271, 2022 WL 1809312, at *5 (citation omitted); see also Concepcion, 142 S. Ct. at 2406 ("The finality of criminal judgments is essential to the operation of the criminal justice system." (Kavanaugh, J. dissenting)).

The instant motion for compassionate release is denied because the Sentencing Guidelines continue to advise the same sentencing range that this Court considered when it sentenced Defendant to life in prison, Defendant has not described an extraordinary and compelling circumstance, and the sentencing factors in 18 U.S.C. § 3553(a) counsel against a sentence reduction.[3]

**IT IS, THEREFORE, ORDERED** that the Motion to Appoint Counsel and Reduce Sentence, (Doc. No. 409), is DENIED.

**IT IS SO ORDERED.**

Signed: August 3, 2023

Frank D. Whitney
United States District Judge

---

[3]Although it opposed the instant motion, the Government notes the Sentencing Commission has proposed new amendments to Sentencing Guidelines § 1B1.13 that will govern motions for compassionate release and might be applicable to Defendant's case. Until and unless this amendment is adopted, it is not relevant to the Court's analysis here. Therefore, even though this instant motion for compassionate release is denied, the Court notes this ruling is without prejudice to Defendant's ability to refile a motion for compassionate release if and when the proposed amendment to Sentencing Guidelines § 1B1.13 is put into effect.

9